IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DON JONES and VJ-2 DEVELOPMENT,          )
INC., an Oregon corporation,             )
                                         )
        Plaintiffs,                      )    Civ No. 04-0047-AA
                                         )
    vs.                                  )
                                         )
CITY OF MCMINNVILLE, an Oregon           )    OPINION AND ORDER
municipal corporation,                   )
                                         )
        Defendant.                       )
_____)

John W. Shonkwiler
13425 S.W. 72nd Avenue
Tigard, OR 97223
    Attorney for plaintiffs

Kari Z. Furnanz
James P. Martin
Hoffman, Hart, & Wagner
Twentieth Floor
1000 S.W. Broadway
Portland, Oregon 97205
    Attorneys for defendant

AIKEN, Judge:
    Don Jones and VJ-2 Development (plaintiffs) sued the City of

McMinnville after plaintiffs sought and failed to annex several

parcels of property west of McMinnville to the City and obtain City
services.   Plaintiffs filed this action in Circuit Court for the
State of Oregon for the County of Yamhill on December 10, 2003,
alleging federal and state antitrust violations, denial of
plaintiffs' civil rights and "takings" under the United States and
Oregon Constitutions, and statutory violations under Oregon law.
Pursuant to 28 U.S.C. §§ 1441 and 1446, defendant removed the case
to the United States District Court for the District of Oregon.
This court denied plaintiffs' motion to remand the proceeding back
to state court and dismissed plaintiffs' federal takings claim.
Defendant now moves for summary judgment as to all plaintiffs'
remaining claims pursuant to Federal Rule of Civil Procedure 56 and
Local Rule 56.1.  Defendant's motion is granted.

<h3 align="center">FACTUAL BACKGROUND</h3>

In 1981, the City of McMinnville, Oregon, adopted a
comprehensive plan and entered into the McMinnville Urban Growth
Boundary Management Agreement ("Agreement") with Yamhill County.
The Agreement was a requirement for gaining acknowledgment of
McMinnville's comprehensive plan by the state of Oregon.  See Or.
Rev. Stat. § 197.175; Or. Rev. Stat. chapters 195, 196, 197.  Under
the Agreement, urban development cannot proceed on a parcel of land
without first annexing the land to the City of McMinnville.  On May
21, 1996, citizens of McMinnville passed a city charter amendment

("charter amendment") requiring that all annexations of lands to the City be approved by a majority of City voters.

Don Jones ("Jones") is the sole owner of VJ-2 Development, Inc. ("VJ-2"). Plaintiffs' property is located outside city limits but within the urban growth boundary. Prior to 1996, 29 acres of plaintiffs' property was annexed to the City and subsequently developed. The remainder of plaintiffs' property consists of two segments: an 83-acre parcel lying north of the previously annexed land and a 96-acre parcel lying south of the previously annexed land.

In May 1995, VJ-2 submitted an annexation proposal for 17.2 acres to the McMinnville city council as part of a development proposal. According to plaintiffs, the city council denied the annexation proposal because it wanted to consider the annexation with regard to a master plan for the build-out of plaintiffs' entire property. Before VJ-2 could submit a new plan, McMinnville voters passed the charter amendment.

Between November 12, 1996, and May 16, 2000, VJ-2 submitted four proposals for annexation. Prior to each vote, Jones provided information to voters to encourage them to approve the proposal. Defendant states that the City approved and supported all of plaintiffs' annexation requests (following the 1995 proposal). Plaintiffs claim that defendant delayed and opposed some of

plaintiffs' annexation requests.  All four of VJ-2's annexation proposals were denied by McMinnville voters.

On June 11, 2003, plaintiffs submitted a request to the city council to extend public facilities and services outside the City's boundaries to plaintiffs' northern parcel and to modify the Agreement to allow such an extension of services.  On July 8, 2003, the city council denied the request.

Plaintiffs assert five claims for relief.[1]  Plaintiffs seek general declaratory, injunctive, and supplemental relief under several state statutes and injunctive relief under state and federal antitrust laws.  Plaintiffs assert temporary and permanent takings under the Oregon Constitution.  Plaintiffs allege violations of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution and of Article I, Section 20 of the Oregon Constitution.  Plaintiffs also allege due process violations under the United States and Oregon Constitutions.  Finally, plaintiffs allege additional civil rights violations.

## DISCUSSION

Summary judgment is appropriate "if pleadings, depositions, answers to interrogatories, and admissions on file, together with

---

[1]Though the Complaint numbers plaintiffs' claims for relief from 1 to 6, the Complaint lacks a second claim for relief.

the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In reviewing a motion for summary judgment, the court must draw all reasonable inferences supported by the evidence in favor of the non-moving party. Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002). The moving party has the burden of establishing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts that show a genuine issue for trial. Id. at 324. A fact issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The Ninth Circuit has refused to find a genuine issue where the only evidence presented is "uncorroborated and self-serving" testimony. Kennedy v. Applause, Inc., 90 F.3d 1477, 1481 (9th Cir. 1996).

## Antitrust Claims

Plaintiffs' first claim for relief focuses on alleged antitrust violations. Plaintiffs allege that defendant has formed a trust, has restrained trade, and/or has monopolized trade and commerce in violation of 15 U.S.C. §§ 1 and 2 and Or. Rev. Stat. §§

646.725 and 646.730.

Defendant argues that municipalities are immune from federal antitrust liability where, as here, their regulatory activities are a foreseeable result of the authorized implementation of state policy. Town of Hallie v. City of Eau Claire, 471 U.S. 34, 38-39 (1985).

Plaintiffs maintain that Oregon statutes pertaining to comprehensive planning, zoning, and annexations are all general in scope and do not specifically authorize the "displacement of unfettered business freedom." Plaintiffs maintain that defendant is not immune from liability because the state statutory scheme does not necessitate nor contemplate the anticompetitive conduct of tying public facilities and services and urban development to only annexation.

Defendant responds that the clearly expressed state policy need not expressly give a city the power to displace competition; it is enough if the state authorizes a city to displace competition with regulation or monopoly public service, and displacement of competition is a foreseeable result of that regulation.

Defendant's analysis is correct. In Parker v. Brown, the Supreme Court held that no federal antitrust liability arises for an anticompetitive act by a state acting "as sovereign." 317 U.S. 341, 352 (1943). Although Parker immunity does not apply directly

to local governments, <u>City of Columbia v. Omni Outdoor Advertising, Inc.</u>, 499 U.S. 365, 370 (1991), local governments may nonetheless qualify for <u>Parker</u> immunity where they are acting with state authority under a clearly articulated state policy to displace competition with regulation. <u>Town of Hallie</u>, 471 U.S. at 40. To qualify as "clearly articulated," the statute expressing state policy need not *explicitly* permit the displacement of competition. <u>City of Columbia</u>, 499 U.S. at 373. It is enough that the allegedly anticompetitive conduct "is the 'foreseeable result' of what the statute authorizes." <u>Id</u>. (quoting <u>Town of Hallie</u>, 471 U.S. at 42).

The Ninth Circuit has adopted a two-part test to determine whether a clearly articulated state policy has authorized a municipality's anticompetitive actions. First, a court must determine whether the legislature authorized the challenged actions of the city. Second, the court must determine whether the legislature intended to displace competition with regulation. <u>Traweek v. City and County of San Francisco</u>, 920 F.2d 589, 591-92 (9th Cir. 1990). "A state is deemed to have intended to displace competition with regulation if the statutes pursuant to which a city has acted clearly contemplates that it may engage in anticompetitive conduct." <u>Id</u>. at 592.

In <u>Traweek</u>, the Ninth Circuit held that, because the California legislature delegated to the City of San Francisco the

power to adopt a comprehensive, long-term general plan for the physical development of the city, the state contemplated the city's allegedly anticompetitive conduct, and the city enjoyed state-action immunity from antitrust claims. Id.

Plaintiffs argue that because the City of McMinnville has sole authority to annex property to itself, antitrust law is violated. But as defendant points out, the annexation process to a city is comprehensively regulated by statute. See Or. Rev. Stat. 222.111.[2]

---

[2]    "(1) When a proposal containing the terms of annexation is approved in the manner provided by the charter of the annexing city . . ., the boundaries of any city may be extended by the annexation of territory that is not within a city and that is contiguous to the city . . .
"(2) A proposal for annexation of territory to a city may be initiated by the legislative body of the city, on its own motion, or by a petition to the legislative body of the city by owners of real property in the territory to be annexed.
                    * * *
"(5) The legislative body of the city shall submit . . . the proposal for annexation to the electors of the territory proposed for annexation and . . . the legislative body of the city shall submit such proposal to the electors of the city. . . .
                    * * *
"(7) Two or more proposals for annexation of territory may be voted upon simultaneously; however, in the city each proposal shall be stated separately on the ballot and voted on separately, and in the territory proposed for annexation no proposal for annexing other territory shall appear on the ballot."
Or. Rev. Stat. § 222.111.

Since the City is granted authority to annex property under state statute, the State contemplated the City's allegedly anticompetitive conduct in determining whether to annex property.

Plaintiffs further allege an antitrust violation because the Agreement precludes the City and Country from providing urban services to unannexed property. However, as defendant points out, the Agreement was adopted in accordance with land-use and planning statutes. Oregon law expressly authorizes city governments to regulate land use in coordination with counties. Or. Rev. Stat. §§ 195.015(5); 195.065; 195.070; 195.075; 197.005(5); Seuss Builders Co. v. City of Beaverton, 294 Or. 254, 257, n.2, 656 P.2d 306 (1982). Further, Oregon statutes require each city and country to "make land use decisions and limited land use decisions in compliance with the acknowledged plan and land use regulations." Or. Rev. Stat. § 197.175(2)(d). Once a city's comprehensive plan is acknowledged, the State requires a city to adhere to its comprehensive plan. As defendant points out, the City of McMinnville's state-acknowledged comprehensive plan states the City's policy for extension of urban services and explains the relationship between the City and Yamhill County. In acknowledging the City's comprehensive plan, the State authorized the Agreement and authorized the City to require annexation prior to the provision of urban services and to prohibit the extension of urban

services to unincorporated areas.

Plaintiffs apply the wrong analysis and outdated case law to their federal antitrust claims. At oral argument on defendant's Motion for Summary Judgment, plaintiffs argued that, because defendant allegedly was not adhering to the intent and spirit of certain state land-use planning statutes, defendant could not claim Parker immunity. Such contentions are irrelevant. As the Ninth Circuit explained in Traweek:

> The legislature is deemed to have intended anticompetitive conduct as long as it may foreseeably result from a broad authority to regulate. Under this non-substantive review of the statutory scheme, the only instance in which the Court will apparently deny a finding of legislative intent to sanction the alleged anticompetitive conduct is where the state has given the municipality an exceedingly broad and unspecific grant of power. The Court's rejection of substantive review of state statutes is wholly consistent with the policies of federalism and state sovereignty upon which the state action doctrine is based. Once the state decides to delegate its regulatory authority to a city, that city enjoys the same immunity from federal antitrust law that the state would have enjoyed.

Traweek, 920 F.2d at 593 (citations omitted).

The court concluded:

> The legality of the 1983 Ordinance under California case law is irrelevant for the purposes of this case. The relevant question is whether the state intended the authorizing statute to have anticompetitive effects. Thus, what the city does to implement that statute, rightly or wrongly, reveals nothing about the state's intent.

Id.

In this instance, a clearly articulated state policy

authorized defendant's actions. Therefore, defendant's motion for summary judgment is granted as to plaintiffs' federal antitrust claims.

Plaintiffs' state antitrust claims undergo a similar analysis, because Oregon antitrust statutes are almost identical to the federal antitrust statutes. See 15 U.S.C. §§ 1, 2 and Or. Rev. Stat. §§ 646.725, 646.730. Oregon courts look to federal antitrust decisions for "persuasive" guidance in interpreting the state antitrust laws. See Oregon Laborers-Employers Health & Welfare Trust Fund v. Philip Morris Inc., 185 F.3d 957, 963 n.4 (9th Cir. 1999). As defendant points out, Or. Rev. Stat § 646.740(6) expressly provides that the provisions of Oregon's antitrust laws "may not be construed to make illegal . . . [a]ny other activity specifically authorized under state or local ordinance." Thus, defendant is entitled to summary judgment on plaintiffs' state antitrust claims.

## State Takings Claim

Plaintiffs' third claim for relief is for regulatory takings under the Fifth and Fourteenth Amendments to the United States Constitution and Article I, section 18, of the Oregon Constitution. In a previous Opinion and Order (issued Apr. 20, 2004) this Court dismissed plaintiffs' federal takings claim as unripe until state law remedies were pursued. See Williamson County Regional Planning

Com'n v. Hamilton Bank of Johnson City, 473 U.S. 172, 195 (1985).
Thus, only plaintiffs' takings claim under Article I, section 18,
is considered.

The statute of limitations for plaintiffs' state takings claim
is six years. Or. Rev. Stat. 12.080(3); Suess Builders, 294 Or. at
267-68, 65 P.2d 306. A regulatory takings claim is not ripe "until
the government entity charged with implementing the regulations has
reached a final decision regarding the application of the
regulations to the property at issue." McMillan v. Goleta Water
Dist., 792 F.2d 1453, 1457 (9th Cir. 1986). Because plaintiffs'
complaint was filed on December 10, 2003, defendant argues that the
alleged taking must have occurred no earlier than December 10,
1997, in order for the claim to meet the statute of limitations
requirements. However, voters rejected plaintiffs' annexation
proposals on three occasions after December 10, 1997. It is at
least arguable that the City did not reach a final decision
regarding the ability of plaintiffs to receive City facilities and
services on the property in question until July 8, 2003, when the
city denied plaintiffs' request to extend services. Thus,
plaintiffs' state takings claim is not time-barred.

Article I, section 18, of the Oregon Constitution provides, in
part, that "[p]rivate property shall not be taken for public use .
. . without just compensation." An action against the government

to recover the value of private property that the government has taken without first filing condemnation proceedings is an action for "inverse condemnation."[3] Vokoun v. City of Lake Oswego, 335 Or. 19, 26, 56 P.3d 396 (2002).

Oregon courts have recognized that a regulation may effect a taking under the Oregon Constitution if it "is a step in a plan to acquire the property for public use and denies the owner an economic use of the property pending its eventual acquisition." Schoonover v. Klamath County, 105 Or. App. 611, 614, 806 P.2d 156 (1991) (quoting Dunn v. City of Redmond, 303 Or. 201, 205, 735 P.2d 609 (1987)).[4]

However, Oregon courts have refused to find that a regulation effected a taking simply because the regulation deprived a property owner of the "greatest profit he might get from using or selling his property." Clarke v. Port of Portland, 23 Or. App. 730, 731-32, 543 P.2d 1099 (1975).

---

[3]Inverse condemnation is "the popular description of a cause of action against a governmental defendant to recover the value of property which has been taken in fact by the governmental defendant, even though no formal exercise of the power of eminent domain has been attempted by the taking agency." Thornburg v. Port of Portland, 233 Or. 178, 180 n.1, 376 P.2d 100 (1963).

[4]A party who asserts that a land use decision or regulation gives rise to a regulatory taking may choose to invoke either the authority of the Oregon Land Use Board of Appeals (LUBA) to invalidate the decision per se, or the court's authority to provide an inverse condemnation remedy. Scappoose Sand and Gravel, Inc. v. Columbia County, 161 Or. App. 325, 332, 984 P.2d 876 (1999).

In *Gruner v. Lane County*, 96 Or. App. 694, 697-98, 773 P.2d 815 (1989), the Oregon Court of Appeals explained, "Inconvenience, reduction in profits or depreciation in the value of property that occurs as a result of a legitimate exercise of the state's police power is *damnum absque injuria* [damage without injury] and not a compensable taking." *See also* *Hallmark Inns & Resorts, Inc. v. City of Lake Oswego*, 193 Or. App. 24, 88 P.3d 284 (2004).

Defendant relies on *Schoonover*, 105 Or. App. 611, 806 P.2d 156, a case with similar facts, where the Oregon Court of Appeals found no inverse condemnation claim. In *Schoonover*, a landowner brought an inverse condemnation action after the county conditioned final approval of landowner's subdivision proposal to the landowner's ability to annex the tract of land into a fire district. *Id*. at 613. The landowner attempted to comply with the condition, "but compliance ultimately proved to be a difficult, if not impossible, task." *Id*. Several years later, after the landowner pursued unsuccessful attempts to either comply with the condition or have it removed, the county changed its regulation *Id*. The landowner than filed an action for inverse condemnation, claiming that the condition had effected a "temporary taking of his property." *Id*. Although the trial court found for the landowner, the Oregon Court of Appeals reversed, holding that the trial court erred in not allowing the county's motion for judgment as a matter

of law.

The Court of Appeals said the county did not impose the condition as "a step in a plan to acquire the property for public use" but "merely regulated the private use of land." Id. at 614-15. The court wrote, "Plaintiff's case boils down to a claim that his inability to comply with the condition and the county's refusal to remove it for a period of six years precluded him from using the property for what he believed to be its highest and best use, the development of a subdivision." Id. at 615. The court found that the condition imposed was a "proper exercise of the police power" and "did not preclude plaintiff from use and enjoyment of property in any number of other uses consistent with its zoning." Id.

Plaintiffs claim that defendant "delayed and harmed" them by not annexing the property before passage of the charter amendment.[5] However, plaintiffs present no evidence that defendant's actions constituted "a step in a plan to acquire the property for public use" or that defendant denied plaintiffs any economic use of the property pending its annexation to the City. Therefore, defendant's motion for summary judgment is granted as to

_____

[5]Defendant moves to strike numerous portions of Jones's affidavit, which describes the alleged delay and harm. Defendant argues that Jones's affidavit is contradicted by Jones's prior sworn deposition testimony and that many portions of the affidavit are conclusory, irrelevant, and/or rely on hearsay. After reading Jones's affidavit, the court agrees and grants defendant's Motion to Strike.

plaintiffs' third claim for relief.

Equal Protection Claims

Plaintiffs' fourth claim for relief alleges defendant violated plaintiffs' rights under the "equal protection" and "privileges and immunities" clauses of the United States and Oregon Constitutions. The court first considers plaintiffs' federal equal protection claim.

The statute of limitations for filing federal constitutional claims under 42 U.S.C. § 1983 is determined by the forum state's statute of limitations for personal injury actions. Sain v. City of Bend, 309 F.3d 1134, 1139 (9th Cir. 2002). Oregon's statute of limitations for personal injury actions is two years. Or. Rev. Stat. § 12.110(1). Plaintiffs' complaint was filed on December 10, 2003. Thus, allegations of federal civil rights violations that occurred prior to December 10, 2001, are time barred.

A federal claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action. Bagley v. CMC Real Estate Corp., 923 F.2d 758, 761-62 (9th Cir. 1991); see also DeAnza Properties X, Ltd. v. County of Santa Cruz, 936 F.2d 1084, 1086 (9th Cir. 1991). Between November 12, 1996, and May 16, 2000, plaintiffs submitted four proposals for annexation, all of which were denied by McMinnville voters. Under Bagley, plaintiffs had reason to know of the alleged injuries resulting from the rejection of annexation proposals at the time voters denied their

annexation proposals and at the time the city counsel denied their request to extend services. Therefore, plaintiff's federal equal protection claims arising from voters' denial of plaintiffs' annexation proposals, and the city counsel's alleged role in these denials, are time-barred.

Plaintiffs also allege federal equal protection claims arising from the city counsel's denial of plaintiffs' request to extend public facilities and services outside the City's boundaries. On June 11, 2003, plaintiffs submitted a request to the city council to extend public facilities and services outside the City's boundaries to plaintiffs' northern parcel and modify the Agreement to allow such an extension of services. On July 8, 2003, the city council unanimously denied the request. Given that the City's denial occurred within the relevant limitations period, plaintiffs' §1983 claims based on this ground are not time-barred.

Plaintiffs maintain that the City treated them differently from others similarly situated by approving annexation or services to others. Plaintiffs argue that the City lacked a rational basis to not extend city services, primarily because it failed to follow the over-arching requirement of meeting its housing needs. Plaintiffs call themselves "a class of one," and claim they were denied equal protection under the Fourteenth Amendment to the United States Constitution.

However, a mere showing of discrimination on the part of a

state government actor is not sufficient to prove an invasion of one's constitutional rights. "[A]bsent a suspect classification or invasion of fundamental rights, equal protection rights are violated only where the classification does not bear a rational relationship to a legitimate state interest." McMillan v. Goleta Water Dist., 792 F.2d 1453, 1456 (9th Cir. 1986).

In McMillan, the Ninth Circuit held that plaintiff had not shown a genuine issue of material fact with regard to its equal protection claim, where the plaintiff did not allege the existence of a suspect classification or an invasion of a fundamental right. Nor had plaintiff set forth evidence showing that defendant Water District's motivation in applying a moratorium on new water connections due to a water shortage was anything other than rational. Id.

Here, plaintiffs do not allege a suspect classification or invasion of a fundamental right. Further, defendant has put forth several rational bases for the city's decision to deny plaintiffs' request to extend public facilities and services outside the city's boundaries. As defendant explains in its Memorandum:

> The UGB Management Agreement clearly states that "[d]evelopment of urban uses on lands designated as [Future Urbanizable Land] shall be preceded by annexation of the land to the City of McMinnville." The UGB Agreement was a state requirement for gaining acknowledgment of the required comprehensive plan for the City. Since development of property at urban densities was prohibited on unincorporated land, it was illogical to extend urban services to the property. Additionally,

McMinnville Water and Light does not permit the extension of water services to lands outside city limits, except to correct a health hazard situation.  Moreover, the voters had spoken with regard to plaintiffs' annexation proposals and that to grant an extension of urban services contrary to the UGB Agreement would have been an end-run" around the annexation process and clear voter opinion.

Defendant's Memo. at 22 (citations to exhibits omitted).

Because plaintiffs do not allege the existence of a suspect classification or an invasion of a fundamental right, nor have plaintiffs set forth evidence showing that defendant's motivation was other than rational, defendant's summary judgment motion is granted as to plaintiffs' federal equal protection claim.

Plaintiffs also allege defendant violated their rights under Article I, section 20, of the Oregon Constitution, which reads: "No law shall be passed granting to any citizen or class of citizens privileges, or immunities, which, upon the same terms, shall not equally belong to all citizens."

Plaintiffs' claim under Article I, section 20, of the Oregon Constitution is also subject to a two-year statute of limitations under both Or. Rev. Stat. § 30.275(9)[6] and § 12.110(1).[7] Thus, only

---

[6]  "Except as provided in ORS 12.120, 12.135 and 659A.875, but notwithstanding any other provision of ORS chapter 12 or other statute providing a limitation on the commencement of an action, an action arising from any act or omission of a public body or an officer, employee or agent of a public body within the scope of ORS 30.260 to 30.300 shall be commenced within two years after the alleged loss or injury."

conduct arising from the city counsel's denial of plaintiffs' request to extend public facilities and services outside the city's boundaries is considered.

Plaintiffs assert that they were denied the same treatment as others similarly situated. "Individual inequality" occurs under Article I, section 20, when "the government has made or applied a law so as to grant or deny privileges or immunities to an individual person without legitimate reasons related to that person's individual situation." State v. Clark, 291 Or. 231, 239, 630 P.2d 810 (1981); State v. Scott, 96 Or. App. 451, 455, 773 P.2d 394 (1989).

Plaintiffs have presented no credible facts showing that defendant applied the law so as to treat plaintiffs differently from others similarly situated. Even if defendant did disfavor plaintiffs' request to extend public facilities and services outside city boundaries, defendant has put forward legitimate reasons for said treatment related to plaintiffs' individual

---

Or. Rev. Stat. § 30.275(9).

[7]     "An action for assault, battery, false
        imprisonment, or for any injury to the person
        or rights of another, not arising on contract,
        and not especially enumerated in this chapter,
        shall be commenced within two years; provided,
        that in an action at law based upon fraud or
        deceit, the limitation shall be deemed to
        commence only from the discovery of the fraud
        or deceit."
Or. Rev. Stat. § 12.110(1).

situation.  Defendant states that its comprehensive plan expressly prohibits the extension of urban services to unincorporated areas, and that it has never extended urban services out of its boundaries for the purpose of connecting unincorporated properties.  Defendant contends that when the City has placed sewer lines and other infrastructure for public facilities in areas outside city limits, it has done so only to serve parcels located within the city limits.  In fact, defendant points out, the City has done this to provide urban services to land that Jones has developed within city limits.

Because plaintiffs do not belong to a suspect class, the court must apply a rational basis analysis to plaintiffs' Article 1, section 20, claim.  Jensen v. Whitlow, 334 Or. 412, 423, 51 P.3d 599 (2002); In re Marriage of Crocker, 332 Or. 42, 55, 22 P.3d 759 (2001).  Because defendant asserts legitimate bases for its actions, defendant is entitled to summary judgment as to this claim.

<u>Due Process Claims</u>

Plaintiffs' fifth claim for relief is for violation of due process under the Fifth and Fourteenth Amendments to the United States Constitution and Article I, section 9, and Article IV, section 2, of the Oregon Constitution.  Plaintiff's federal and state due process claims arising from voters' denial of plaintiffs' annexation proposals, and the city counsel's alleged role in these

denials, are time-barred, as discussed above.

In terms of defendant's refusal to extend facilities and services to plaintiffs' unannexed property, plaintiffs have provided no legal or factual basis for their substantive due process claim. Furthermore, the conduct on which plaintiffs' base their substantive due process claim is the same conduct on which they based their claims for violations of equal protection. Plaintiffs are precluded from asserting a substantive due process claim instead of, or in addition to, a more specific constitutional provision based on the same set of facts. Buckles v. King County, 191 F.3d 1127, 1137-38 (9th Cir. 1999).

Neither have plaintiffs provided any legal or factual basis for any procedural due process claim; plaintiff does not allege that defendant failed to provide them with notice or an opportunity to be heard. Finally, plaintiffs' Ex Post Facto claim fails because there is no penal law at issue in this case. See Brown v. Palmateer, 379 F.3d 1089, 1093 (9th Cir. 2004).

## Plaintiffs' Remaining Claims

Plaintiffs' sixth claim neither makes new arguments nor offers additional legal bases for relief. Plaintiffs also raise a number of state law claims but, as defendant points out, they failed to use the proper procedures available to pursue state law remedies. Under Oregon law, plaintiffs should have raised any objections to land use decisions by the City with the Land Use Board of Appeals

(LUBA) or, alternatively, by requesting a Writ of Review. LUBA holds exclusive jurisdiction to review any land use decision or limited land use decision of a local government. Or. Rev. Stat. § 197.825.

Therefore, summary judgment is granted in favor of defendant on plaintiffs' sixth claim for relief.

CONCLUSION

Defendant's Motion for Summary Judgment (doc. 32) and Motion to Strike (doc. 48) are GRANTED, and this case is DISMISSED.

IT IS SO ORDERED.

Dated this 25 day of April 2005.


_____
                Ann Aiken
     United States District Judge